UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| NC INTERACTIVE, LLC, | ) |
| Plaintiff, | ) CIVIL ACTION |
| v. | ) Case No.: 1:22-cv-20334 |
| MAGICA MULTIMEDIA, INC. and OSCAR WALTER CARIDAD, an individual, | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, NC INTERACTIVE, LLC ("Plaintiff" or "NCI"), by and through its undersigned counsel, brings this action for breach of contract against Defendants, MAGICA MULTIMEDIA, INC. and OSCAR WALTER CARIDAD (collectively, "Defendants"):

**NATURE OF THE ACTION**

1. This is an action seeking to collect amounts due under a written agreement and for damages based on claims for: (i) breach of contract, (ii) unjust enrichment, and (iii) alter ego liability against the Defendants.

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff, NC Interactive, LLC, is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located in Bellevue, Washington.

3. At all times material hereto, Defendant, Magica Multimedia, Inc. ("Magica"), was a Florida corporation incorporated and existing under the laws of Florida.

4. At all times material hereto, Defendant, Oscar Walter Caridad ("Caridad"), was a resident of Miami-Dade County, Florida. In the event Caridad no longer resides in Miami-Dade, this Court has personal jurisdiction over him, pursuant to Fla. Stat. § 48.193(1)(a)(1), for operating Magica and conducting its business in Florida.

5. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1332, because there is complete diversity among the parties and the amount in controversy exceeds $75,000.

6. Pursuant to 28 USC § 1391(b)(1), venue lies in this district because Caridad resides in this district and Magica's principal place of business was in this district.

7. Pursuant to § 9(a) of the written agreement between NCI and Magica, the causes of action against Magica shall be construed in accordance with the laws of the State of California.

8. NCI has complied with all conditions precedent to the filing of this action or they have been waived.

9. NCI has retained the undersigned law firm and is obligated to pay same reasonable attorney's fees and expenses.

## FACTS

A. *Facts Related to NCI's claims against Magica*

10. On April 13, 2005, NCI and Magica voluntarily entered into a written agreement whereby Magica would purchase software games and products from NCI, with an exclusive right to distribution of those products in Mexico. Then, on June 12, 2012, Caridad, President, sole director and shareholder of Magica, voluntarily dissolved Magica and submitted Articles of Dissolution to the Florida Department of State. NCI was not provided notice of the dissolution.

11. Subsequent to Magica's dissolution, on November 12, 2012, Caridad, purportedly on behalf of Magica, entered into an amendment of the agreement between Magica and NCI whereby: a) Magica no longer had exclusive rights to distribution of NCI's products in Mexico and b) Magica would defend, indemnify, and hold NCI harmless from any claims, losses, liabilities, damages, and expenses arising out of or in connection with Magica's sale or distribution of NCI's products or Magica's breach of the agreement. True and correct copies of the April 13, 2005 agreement and November 12, 2012 amendment (collectively, the "Agreement") are attached hereto as **Composite Exhibit A**.

12. Under the Agreement, in July 2019 and August 2019, Magica ordered and Plaintiff delivered 12,000 units of physical Guild Wars 2 $25 Value Gem Cards ("Gem Cards").

13. Magica's order and receipt of the Gem Cards was memorialized by two invoices issued by NCI: INV030181 in the amount of $126,000, dated July 30, 2019 and INV030202 in the amount of $54,000, dated August 30, 2019 (collectively, the "Invoices"). The total due to NCI under the two Invoices is $180,000. Copies of the Invoices are attached hereto as **Composite Exhibit B**.

14. Pursuant to Section 5 of the Agreement, Magica is obligated to render payment for the Invoices within 30 days of their receipt.

15. On August 30, 2019, Magica made a partial payment in the amount of $16,000 toward INV030181.

16. A few days later, on September 6, 2019, Caridad requested copies of the Invoices, which Plaintiff sent to him that same day.

17. In December 2019 and January 2020, following the partial payment and Caridad's request for copies of the Invoices, NCI communicated with Magica regarding the outstanding balance owed under the Invoices and pursuant to the Agreement.

18. However, neither Magica nor Caridad rendered payment for the remaining balance due and owing to NCI under the Invoices.

19. Accordingly, on September 21, 2021, NCI made demand upon Magica to pay the amounts due under the Agreement and the Invoices (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit C.**

20. NCI received no response to the Demand Letter.

21. To date, NCI has not been paid the money it is owed under the Agreement and Invoices.

22. Magica is in material breach of the Agreement.

B. *Facts Related to NCI's claims against Caridad*

23. At all times material hereto, Caridad was the President, sole director, and sole shareholder of Magica.

24. At the time that Caridad, on behalf of Magica, entered into the November 12, 2012 amendment to the original agreement between NCI and Magica, unbeknownst to NCI, Caridad had already voluntarily dissolved Magica and submitted Articles of Dissolution to the Florida Department of State five months prior. The Articles of Dissolution signed by Caridad are attached hereto as **Exhibit D**.

25. In contravention of Fla. Stat. § 607.1405(1), which disallows directors of a corporation from carrying on any business except that appropriate to wind up and liquidate the business and its affairs, Caridad, on behalf of Magica, continued conducting business with NCI

and entering into contracts with NCI, including for the Gem Cards memorialized by the Invoices, for another 7 years.

26. Throughout the course of Caridad's continued business with NCI, on behalf of Magica, Caridad never notified NCI of Magica's dissolution.

27. Caridad, the sole shareholder of Magica, dominated and controlled Magica, to such an extent that Magica's independent existence was, in fact, non-existent and he was in fact the alter ego of Magica.

28. Caridad continued doing business with NCI, on behalf of a dissolved Magica, to operate under the guise of a corporate veil, in an attempt to mislead NCI, protect his personal assets and shield himself from personal liability to NCI, a creditor.

29. Pursuant to Fla. Stat. § 607.1421(4), a "director, officer or agent of a corporation…purporting to act on behalf of the corporation, is personally liable for the debts, obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution…if he has actual notice of the administrative dissolution at the time such action is taken…"

30. In this instance, Caridad had notice of Magica's dissolution since he personally signed and filed the Articles of Dissolution for Magica with Florida's Secretary of State in June 2012.

31. To impute liability to Caridad for Magica's debt, which was incurred following Magica's dissolution, Caridad would have had to be the one who entered into the contract or obligation.

32. Caridad did, in fact, enter into the Agreement with NCI, on behalf of Magica, and is therefore personally liable to NCI for the Invoices.

## COUNT I - BREACH OF CONTRACT
### *(against Magica)*

33. Plaintiff reincorporates by reference the allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

34. This is a cause of action for breach of the Agreement.

35. The Agreement is a valid and legally binding contract.

36. NCI performed under the Agreement by delivering Magica the Gem Cards it ordered.

37. Pursuant to the Agreement, Magica was obligated to pay NCI for the Invoices within 30 days of their receipt.

38. Magica materially breached the Agreement by failing to pay NCI the total amount due for the Gem Cards on or before September 30, 2019.

39. NCI has suffered damages as a direct and proximate result of Magica's material breach of the Agreement.

**WHEREFORE,** Plaintiff demands judgment in its favor in the amount of $164,000, plus attorneys' fees and costs, together with any interest due thereupon, against Magica and for such other relief the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT
### *(against Magica)*

40. Plaintiff reincorporates by reference the allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

41. This is a cause of action for unjust enrichment.

42. NCI conferred the benefit of delivering the Gem Cards to Magica.

43. Magica knowingly accepted and received the benefit of the foregoing from NCI.

44. Magica failed to pay the amounts due and owing to NCI under the Invoices for the Gem Cards.

45. Under the circumstances, it is inequitable that Magica retain the benefit conferred by NCI without paying the amount due and owing to NCI.

46. NCI has suffered damages as a result of Magica's actions and inactions.

**WHEREFORE,** Plaintiff demands judgment in its favor in the amount of $164,000, plus attorneys' fees and costs, together with any interest due thereupon, against Magica and for such other relief the Court deems just and proper.

## COUNT III - BREACH OF CONTRACT
*(against Caridad)*

47. Plaintiff reincorporates by reference the allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

48. This is a cause of action for breach of the Agreement.

49. Caridad entered into the Agreement, and ordered the Gem Cards from NCI, purportedly on behalf of Magica, which had already been voluntarily dissolved.

50. The Agreement between Magica and NCI is a valid and legally binding contract.

51. NCI performed under the Agreement by delivering Magica the Gem Cards it ordered.

52. Pursuant to the Agreement, Magica was obligated to pay NCI for the Invoices within 30 days of their receipt.

53. Magica materially breached the Agreement by failing to pay NCI the total amount due for the Gem Cards on or before September 30, 2019.

54. Pursuant to Fla. Stat. § 607.1421(4), a "director, officer or agent of a corporation…purporting to act on behalf of the corporation, is personally liable for the debts,

obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution…if he has actual notice of the administrative dissolution at the time such action is taken…"

55. Caridad had notice of Magica's dissolution since he personally signed and filed the Articles of Dissolution for Magica with Florida's Secretary of State in June 2012.

56. To impute liability to Caridad for Magica's debt, which was incurred during the company's dissolution, Caridad would have had to be the one who entered into the contract or obligation.

57. Caridad did, in fact, enter into the Agreement with NCI, on behalf of Magica, and is therefore personally liable to NCI for the Invoices.

58. NCI has suffered damages as a result of Caridad's actions.

**WHEREFORE,** Plaintiff demands judgment in its favor in the amount of $164,000, including attorneys' fees and costs, together with any interest due thereupon, against Caridad and for such other relief the Court deems just and proper.

**COUNT IV - ACTION TO IMPOSE ALTER EGO LIABILITY AND PIERCE CORPORATE VEIL**
*(against Caridad)*

59. Plaintiff reincorporates by reference the allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

60. This is an action to impose alter ego liability upon Caridad for the debts and liabilities of Magica, and to pierce the corporate veil of Magica for the benefit of Caridad.

61. After voluntarily dissolving Magica in June 2012, Caridad improperly continued to do business with NCI, on behalf of Magica, in an attempt to mislead NCI, protect his personal assets and shield himself from personal liability to NCI, a creditor.

62. For all purposes, Caridad and NCI are single economic entities.

63. Among the factors, which existed at all times material hereto, supporting alter ego liability: (i) Caridad was the President, sole director, and sole shareholder of Magica, (ii) Caridad conducted Magica business through his personal e-mail account, and (iii) Caridad continued to use and operate Magica, after he voluntarily dissolved it, for the improper purpose of misleading NCI into doing business with Magica, in an attempt to protect his personal assets and shield himself from personal liability to NCI, a creditor.

**WHEREFORE**, NCI demands entry of judgment against Caridad: (i) piercing the corporate veil of Magica; (ii) determining that Caridad and Magica are alter egos of each other; (iii) determining that Caridad is liable for all of the debts and liabilities of Magica; and (iv) for such other and further relief as the Court deems just and proper.

Dated: February 1, 2022

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Plaintiff*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, FL 33131
Telephone: 305.379.7904
Facsimile: 305.379.7905
E-mail: bamron@bastamron.com
E-mail: aiglesia@bastamron.com

By:  /s/ *Alejandra M. Iglesia, Esq.*
    Brett M. Amron, Esq. (FBN 0148342)
    Alejandra M. Iglesia, Esq. (FBN 1010519)

11/06/2004 11:52  30053650076                CMIZE                              PAGE  01

April 12, 2005

To: Walter Caridad, MAGICA MULTIMEDIA INC

Re: Letter of Intent for the sale and distribution of products dated on or after March 15, 2005 by and between NC Interactive Inc., ("NC") and Magica Multimedia Inc ("MAGICA") (the "Agreement")

Dear Walter:

This Agreement shall set forth the terms and conditions by which NC and MAGICA shall conduct business in connection with the exclusive right to distribution to Mexico (the "Territory") of software games and products owned by NC ("Product(s)") for MAGICA. NC retains all rights not expressly granted herein. Any use of the term "sale" or "purchase" shall be interpreted to mean license for purposes of this Agreement. All rights not expressly granted herein are reserved by NC, including, without limitation, the right to distribute the Products in OEM and bundling transactions, distribution via electronic delivery systems such as the Internet and rental or leasing of the Products. In consideration of the mutual covenants expressed herein, the parties agree as follows:

1. **Price.** NC will provide to MAGICA, from time to time, NC's price list including MAGICA wholesale cost. Prices do not include taxes of any nature. MAGICA shall pay all taxes (including, without limitation, any sales, use, excise, value added or similar tax or customs duties), when invoiced by NC or will supply appropriate tax exemption certificates in a form satisfactory to NC. NC may change its prices in its sole discretion.

2. **Market Development Fund.** MAGICA agrees to utilize its best efforts to market and promote the sale of the Products. NC shall provide market development and advertising funds, at its sole discretion. Written approval from NC is required prior to execution of the event. Proof of performance must be submitted within 60 days from date of the event. No deductions may be taken off invoice.

3. **Freight.** Magica will pay freight FOB point of shipment. Distributor shall assume all risk of loss or damage to the Products and is responsible for all insurance charges

4. **Orders and Acceptance.** All orders for Products by MAGICA shall be subject to acceptance by NC, at its sole discretion, and shall not be binding on NC until the earlier of confirmation or shipment, and, in the case of acceptance by shipment, only as to the portion of the order actually shipped. NC shall use reasonable efforts to meet MAGICA's requested delivery schedules. All orders for Products by Distributor shall be subject to acceptance by NC and shall not be binding on NC until the earlier of confirmation or shipment, and, in the case of acceptance by shipment, only as to the portion of the order actually shipped. NC shall use best commercial efforts to meet Distributor's requested delivery schedules. NC may make partial shipments of Distributor's orders to be separately invoiced and paid for when due. NC reserves the right to allocate existing inventory among its customers with orders for such Product in a manner reasonably determined by NC and to backorder such orders in whole or in part if necessary.
NC reserves the right to cancel or suspend any orders placed by Distributor and accepted by NC, or refuse or delay shipment thereof, if Distributor fails to (1) make payment as provided herein or in any invoice; (2) to meet credit or financial requirements established by NC, or (3) otherwise to comply with the terms and conditions of this Agreement.

5. **Payment.** MAGICA will pay NC the amount owed pursuant to each purchase order, in accordance with the terms and conditions of this Agreement, no later than thirty (30) days after MAGICA's receipt of the invoice(s) covered by such purchase order, such credit subject to MAGICA qualifying and maintaining acceptable credit conditions as established by NC from time to time. Credit terms are extended in the sole discretion of NC.

6. **Warranties and Disclaimers.**

(a). THESE PRODUCTS ARE BEING SUPPLIED TO DISTRIBUTOR "AS IS" AND NC MAKES NO WARRANTIES REGARDING THE PRODUCTS OR ANY OTHER MATERIALS, EXPRESS OR IMPLIED,

Vr. #1 – 4/12/05


EXHIBIT A

INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE.

(b). IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR ANY CLAIM, CAUSE OF ACTION, LOSS, DAMAGE OR EXPENSE OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS) AND ATTORNEYS' FEES) ARISING OUT OF OR IN CONNECTION WITH THIS LETTER AGREEMENT, THE PRODUCTS OR OTHERWISE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS LETTER AGREEMENT, AND WITHOUT LIMITING ANY OTHER RIGHTS, REMEDIES, LIMITATIONS OR RESTRICTIONS HEREIN OR UNDER LAW, NC WILL NOT BE LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS LETTER AGREEMENT UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY, UNDER LAW OR EQUITY, FOR ANY AMOUNTS AGGREGATING IN EXCESS OF AMOUNTS PAID TO IT HEREUNDER WITH RESPECT TO THE PARTICULAR PRODUCT WHICH IS THE SUBJECT OF THE CLAIM OR CAUSE OF ACTION IN THE TWELVE (12) MONTH PERIOD BEFORE THE CAUSE OF ACTION AROSE.

8. Term and Termination. The term of this Agreement shall be for a period of one (1) year, beginning on the signature date. Thereafter, this agreement shall be renewed for successive one (1) year terms unless terminated sooner as provided under provisions of this Agreement. Either party may terminate this Letter Agreement, with our without cause, by giving thirty (30) days' written notice to the other party.

9. Miscellaneous:

(a). This Agreement shall be governed by and construed in accordance with the laws of the State of California; provided, however, that in the case of a cause of action brought by NC, the governing law shall be the laws of the State of California. The losing party to any litigation between the parties hereto shall pay to the prevailing party all expenses, costs and fees (including attorneys' fees) incurred by such prevailing party in such litigation. In the event of a dispute or legal action between the parties, they agree to waive any objections to personal jurisdiction, and agree to service of process and venue as follows: (i) in the case of a cause of action brought by NC the venue shall be the courts having within their jurisdiction MAGICA's principal place of business and (ii) in the case of a cause of action brought by MAGICA the venue shall be the courts having within their jurisdiction NC's principal place of business.

(b). In the event of a conflict between the terms of this Agreement and NC's invoice, the terms of the invoice shall control. Any terms or conditions appearing on the face or reverse side of any MAGICA: (i) purchase order, (ii) acknowledgment or (iii) confirmation that are different from or in addition to those required hereunder shall not be binding on NC, even if signed and returned.

If the terms of this letter are acceptable, please have an authorized signatory sign below and return to my attention.

Very truly yours                                   AGREED AND ACCEPTED:

                                                   Magica Multimedia Inc.
                                                   BY: _____
                                                   NAME:  Walter Caridad
NC Interactive, Inc.                               DATE:  April 13th 2005
DATE: _____                              TITLE: President

Vr. #1 – 4/12/05

## AMENDMENT NO. 1

This Amendment No. 1 ("**Amendment**") to the Letter of Intent for the sale and distribution of products dated on or after March 15, 2005 (the "**Agreement**") effective as of November 12th 2012 (the "**Amendment Effective Date**"), is made between NC Interactive, Inc. ("**NC**") and Magica Multimedia Inc. ("**Magica**"). Unless otherwise expressly defined in this Amendment, all capitalized terms herein will have the meanings ascribed to them in the Agreement.

### RECITALS

A. NC and Magica wish to amend certain provisions of the Agreement to remove the exclusive right to distribution in Mexico, as well as to make the other amendments provided in this Amendment.

In consideration of the promises and mutual covenants contained in this Amendment and the Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, NC and Magica hereby amend the Agreement as follows:

### AMENDMENT

1. **Non-Exclusivity.** The first sentence of the Agreement is hereby deleted in its entirety and is replaced by the following:

   "This Agreement shall set forth the terms and conditions by which NC and MAGICA shall conduct business in connection with the non-exclusive right for MAGICA to distribute to Mexico (the "Territory") of software games and products owned by NC ("Products") during the term of this Agreement."

2. **Compliance With Law; Indemnification.** The following section is added as a new Section 9(c) of the Agreement:

   "9. (c). MAGICA will comply with all applicable laws, rules and regulations with respect to the sale and distribution of Products and its performance of this Agreement, including, without limitation, any applicable export and import control laws, rules and regulations. MAGICA will defend, indemnify and hold harmless NC and its affiliates, and their respective directors, officers, employees and agents from and against all claims, losses, liabilities, damages and expenses (including, without limitation, reasonable attorneys' fees) arising out of or in connection with: (i) MAGICA's sale or distribution of the Products; or (ii) MAGICA's breach of this Agreement. NC may participate in the defense or settlement of any claim at its own expense. MAGICA will not consent to entry of any judgment or enter into any settlement that adversely affects NC or admits or stipulates to any liability or fault on the part of NC, without NC's prior written consent, not to be unreasonably withheld."

3. **Effect.** The provisions of this Amendment will control over any inconsistent provisions of the Agreement. Except as expressly amended by this Amendment, the Agreement, as modified and supplemented by this Amendment, will remain in full force and effect. The terms of this Amendment and the Agreement are confidential information of the parties, and each party will maintain the confidential information in strict confidence and not disclose it to any third party (other than its affiliates) or use it for any purpose other than its performance under the Agreement. This Amendment may be executed by facsimile and in counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument.

Amendment No. 1 to Agreement

By signing below, the parties agree to the terms and conditions of this Amendment as of the signature dates below and intend it to be effective as of the Amendment Effective Date.

| **NC Interactive Inc.** | **Magica Multimedia Inc.** |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: Walter Caridad |
| Title: _____ | Title: President |
| Date Signed: _____ | Date Signed: November 12th, 2012 |

**NC Interactive, LLC**
**3180 139th Ave SE Suite 100**
**Bellevue WA   98005**

| Invoice | INV030181 |
|---|---|
| Date | 7/30/2019 |
| Page | 1 |

**Bill To:**

Magica Multimedia Inc.
260 Crandon Blvd #36
Suite 158
Miami FL   33149

**Ship To:**

Magica Multimedia Inc.
8324 NW 68th St.
Miami FL   33166

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | Master No. |
|---|---|---|---|---|---|---|
| 163 | MAGICA | | CUPU | Net 30 | 7/18/2019 | 38,050 |

| Ordered | Shipped | B/O | Item Number | Description | Discount | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 8,400 | 8,400 | 0 | GEMS-SA-2000 | $25 Value Gems Card, SA | $0.00 | $15.00 | $126,000.00 |

| | |
|---|---|
| Subtotal | $126,000.00 |
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $0.00 |
| Trade Discount | $0.00 |
| Total | $126,000.00 |



**EXHIBIT**
**Composite B**

**NC Interactive, LLC**
**3180 139th Ave SE Suite 100**
**Bellevue WA   98005**

| Invoice | INV030202 |
|---|---|
| Date | 8/30/2019 |
| Page | 1 |

**Bill To:**

Magica Multimedia Inc.
260 Crandon Blvd #36
Suite 158
Miami FL   33149

**Ship To:**

Magica Multimedia Inc.
8324 NW 68th St.
Miami FL   33166

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | Master No. |
|---|---|---|---|---|---|---|
| PO164 | MAGICA | | CUPU | Net 30 | 8/7/2019 | 38,075 |

| Ordered | Shipped | B/O | Item Number | Description | Discount | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 3,600 | 3,600 | 0 | GEMS-SA-2000 | $25 Value Gems Card, SA | $0.00 | $15.00 | $54,000.00 |

| | |
|---|---|
| Subtotal | $54,000.00 |
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $0.00 |
| Trade Discount | $0.00 |
| Total | $54,000.00 |



September 28, 2021

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Magica Multimedia Inc.
260 Crandon Blvd
Suite 158
Miami FL 33149
Attn: Mr. Oscar Walter Caridad, President

**With copies to**:

| | | |
|---|---|---|
| Magica Multimedia Inc<br>c/o Mr. Oscar Walter Caridad<br>441 Harbor Drive<br>Key Biscayne, FL 33149 | Magica Multimedia Inc<br>c/o Mr. Oscar Walter Caridad<br>8324 NW 68th St.<br>Miami FL 33166 | Magica Multimedia Inc.<br>c/o Mr. Oscar Walter Caridad<br>7000 Island Blvd., #809<br>Aventura, FL 33160 |
| Magica Multimedia Inc<br>c/o Mr. Oscar Walter Caridad<br>141 Crandon Blvd. Apt 437<br>Key Biscayne FL 33149 | Magica Multimedia Inc.<br>c/o Mr. Oscar Walter Caridad<br>8211 NW 68 Street<br>Miami, FL 33166 | Magica Multimedia Inc.<br>c/o Mr. Oscar Walter Caridad<br>2001 NW 84th Avenue<br>Miami FL 33122 |
| Magica Multimedia Inc.<br>c/o Mr. Oscar Walter Caridad<br>1603 NW 79 Avenue<br>Miami FL 33126 | wcaridad@gmail.com | |

**RE: Magica Multimedia Outstanding Amounts**

Dear. Mr. Caridad,

I write in reference to the Letter of Intent for the sale and distribution of products dated as of March 15, 2005 between NC Interactive, LLC (as successor to NC Interactive, Inc.) ("**NCI**") and Magica Multimedia, Inc ("**Magica**") as amended by that certain Amendment No. 1 dated November 12, 2012 between NCI and Magica (together, the "**Agreement**").

The following invoices have been tendered and remain outstanding as of the date of this letter.:

| Date | Invoice Number | Amount |
|---|---|---|
| 7/30/2019 | INV030181 | $126,000.00 |
| 8/30/2019 | INV030202 | $54,000.00 |
| | Payment(s) received: | - $16,000.00 |
| | **TOTAL:** | $164,000.00 |

The above invoices were issued based on Magica's purchase and receipt of a total of 12,000 units of physical Guild Wars 2 $25 Value Gem Cards from NCI in July 2019 and August 2019. Under Section 5 of the Agreement, Magica is obligated to render payment for invoiced amounts within 30 days of receipt of invoice. NCI has received neither payment nor objection to the invoiced amounts. Accordingly, **Magica is**

3180 139th Avenue SE • Suite 500 • Bellevue, WA 98005





**in default of the Agreement by failing to pay $164,000.00 in amounts outstanding as of the date of this letter. Magica and its owner(s) or successor(s) are liable to pay $164,000.00 to NC Interactive, LLC, immediately, together with prejudgment interest of 10% per annum.**

NCI's Sales team has contacted Magica multiple times to amicably resolve these outstanding amounts without success. Given Magica's continued refusal to pay outstanding amounts, NCI is considering more aggressive means of pursuing the remuneration to which we are entitled under the Agreement, up to and including litigation.

NCI reserves all rights under the Agreement and at law to seek redress. Please provide a response of your intent to pay the invoiced amounts by October 15, 2021.

Very truly yours,

*Janet Lin*
—5E25C91B52A14C4...

Janet Lin
SVP & General Counsel

Enclosures: Invoices #s INV030181, INV030202

**NC Interactive, LLC**
**3180 139th Ave SE Suite 100**
**Bellevue WA    98005**

| Invoice | INV030181 |
|---|---|
| Date | 7/30/2019 |
| Page | 1 |

**Bill To:**

Magica Multimedia Inc.
260 Crandon Blvd #36
Suite 158
Miami FL    33149

**Ship To:**

Magica Multimedia Inc.
8324 NW 68th St.
Miami FL    33166

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | Master No. |
|---|---|---|---|---|---|---|
| 163 | MAGICA | | CUPU | Net 30 | 7/18/2019 | 38,050 |

| Ordered | Shipped | B/O | Item Number | Description | Discount | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 8,400 | 8,400 | 0 | GEMS-SA-2000 | $25 Value Gems Card, SA | $0.00 | $15.00 | $126,000.00 |

| | |
|---|---|
| Subtotal | $126,000.00 |
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $0.00 |
| Trade Discount | $0.00 |
| Total | $126,000.00 |

**NC Interactive, LLC**
**3180 139th Ave SE Suite 100**
**Bellevue WA    98005**

| | |
|---|---|
| Invoice | INV030202 |
| Date | 8/30/2019 |
| Page | 1 |

| Bill To: | Ship To: |
|---|---|
| Magica Multimedia Inc.<br>260 Crandon Blvd #36<br>Suite 158<br>Miami FL    33149 | Magica Multimedia Inc.<br>8324 NW 68th St.<br>Miami FL    33166 |

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | Master No. |
|---|---|---|---|---|---|---|
| PO164 | MAGICA | | CUPU | Net 30 | 8/7/2019 | 38,075 |

| Ordered | Shipped | B/O | Item Number | Description | Discount | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|
| 3,600 | 3,600 | 0 | GEMS-SA-2000 | $25 Value Gems Card, SA | $0.00 | $15.00 | $54,000.00 |

| | |
|---|---|
| Subtotal | $54,000.00 |
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $0.00 |
| Trade Discount | $0.00 |
| Total | $54,000.00 |

FILED
Jun 12, 2012
Secretary of State

# ARTICLES OF DISSOLUTION

Pursuant to section 607.1403, Florida Statutes, this Florida corporation submits the following Articles of Dissolution:

FIRST:   The name of the corporation as currently filed with the Florida Department of State:

MAGICA MULTIMEDIA, INC.

SECOND:   The document number of the corporation: P96000013924

THIRD:   The date dissolution was authorized: January 1, 2012

Effective date of dissolution: June 13, 2012

FOURTH:   Dissolution was approved by the shareholders. The number of votes cast for dissolution was sufficient for approval.

I submit this document and affirm that the facts stated herein are true. I am aware that any false information submitted in a document to the Department of State constitutes a third degree felony as provided for in section 817.155, Florida Statutes.

Signature:   WALTER CARIDAD                                        PRESIDENT

Electronic Signature of Signing Officer, Director, Incorporator or Authorized Representative



EXHIBIT D